IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| ROSALVA NUÑEZ-RENCK, § | |
| § | |
| Plaintiff, § | |
| § | Civil Action No. 3:23-CV-1308-D |
| VS. § | |
| § | |
| INTERNATIONAL BUSINESS § | |
| MACHINES CORPORATION (IBM), § | |
| § | |
| Defendant. § | |

MEMORANDUM OPINION
AND ORDER

In this removed action, plaintiff Rosalva Nuñez-Renck ("Nuñez") sues her employer, International Business Machines Corporation ("IBM"), for discrimination under federal- and state-law antidiscrimination statutes. IBM moves to dismiss under Fed. R. Civ. P. 12(b)(6) for failure to state a claim on which relief can be granted. For the reasons that follow, the court grants the motion but allows Nuñez to replead.

I

Nuñez is a 43-year-old Hispanic woman and a naturalized U.S. citizen whom IBM hired in August 2000.[1] Since then, she has advanced within the company, and she currently holds the position of Vice President of Ecosystem Programs & Strategy.

---

[1] The court recounts the background facts favorably to Nuñez as the nonmovant. In deciding a Rule 12(b)(6) motion to dismiss, "[t]he 'court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'" *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Martin K. Eby Constr. Co. v. Dall. Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004) (addressing Rule 12(b)(6) standard)).

In April 2021 Nuñez informed several IBM affiliates that she was pregnant. On April 2, when she met with IBM's external legal counsel to discuss her forthcoming role as a witness for IBM in a retaliation lawsuit (*Kingston v. IBM*), she informed the legal team of her pregnancy. On April 8 she notified her manager, David La Rose ("La Rose"). Within the next few days, she also informed IBM's internal and other external legal counsel.

On April 13 Nuñez testified in *Kingston v. IBM* via Zoom call. Nuñez alleges in her state-court original pleading-complaint ("complaint") that she was "ferociously attacked" during her testimony in a "combative and significantly assaultive examination," and that IBM's counsel neither interjected nor objected. Compl. ¶¶ 16, 17. The lawyers did, however, express concern for Nuñez's well-being after the fact, and they reported the incident to the IBM Human Resources team.

The next day, a member of IBM Human Resources contacted Nuñez to "ask if she was okay," and to inform her that La Rose had been made aware of the incident and would also reach out to her. Compl. ¶ 17. La Rose contacted Nuñez the following day, "asking how things were going related to the *Kingston v. IBM* matter." Compl. ¶ 18. Nuñez told him that "it was very stressful and that she was verbally attacked." *Id.*

Nuñez alleges that, soon after these events, La Rose's treatment of her markedly shifted. She asserts that, before April 8, 2021, she had no issues with La Rose and felt that he was "quite supportive" of her work, ideas, and deliverables. Compl. ¶ 25. But once she informed La Rose of her pregnancy, "quickly thereafter there was extremely high tension, bullying, and immediate conflict." *Id.*

According to Nuñez's complaint, the first instance was on April 16, 2021, when La Rose called Nuñez to discuss a work project and "began verbally attacking her." Compl. ¶ 19. Nuñez alleges that, at one point, she "gasped as she was in shock," and that La Rose then "started screaming at her, 'Are you laughing?'" *Id.* Nuñez's husband, who overheard the call, "was standing next to her in shock," and told her that she should hang up the telephone. *Id.* Nuñez alleges that "[t]he way in which David La Rose was screaming at [her]" during the call "was nothing shy of what you may see in a street brawl" and was "just shy of coming to physical 'blows.'" Compl. ¶¶ 19, 27.

Nuñez alleges that, two days later, she went to the emergency room for pre-term labor. Thereafter, she visited her doctor more frequently to ensure that she would not have a miscarriage.

Nuñez alleges that she began maternity leave on July 16, 2021. While on leave, La Rose included her on multiple communications regarding IBM staffing needs. On August 5 he emailed Nuñez and another employee to ask them to work on hiring for a vacant role. Then, on September 8, he asked Nuñez to take on job duties from an employee who had resigned. He told Nuñez "that banding/promotion would be assessed," and asked her to "provide a new structure/design for [her] return to work." Compl. ¶ 23. On September 11 he created a calendar invitation for a meeting between Nuñez and IBM employee Joanne Johnson ("Johnson"), entitled "Request for a quick career chat." D. App. (ECF No. 2) at 29. Emails between La Rose and Johnson prior to September 11 indicate that La Rose had recommended Nuñez for a vacant role.

Nuñez returned from maternity leave on September 27, 2021. She alleges that, since that time, La Rose's "bullying and yelling ha[ve] continued" on multiple telephone calls. Compl. ¶ 25.

Nuñez informed IBM Human Resources on March 25, 2022 that she was seeking legal representation in connection with these events. On May 11, 2022 she filed a Charge of Discrimination ("Charge") against IBM with the Equal Employment Opportunity Commission ("EEOC"), alleging race discrimination, sex discrimination, retaliation, and violation of the Family and Medical Leave Act. Six months later, she amended the Charge to allege race discrimination, color discrimination, sex discrimination, age discrimination, retaliation, and violation of the Equal Pay Act. She made no changes to the affidavit accompanying the Charge; the only changes were to the check-boxes and general description box on the form's cover sheet.

After the EEOC dismissed the Charge, Nuñez filed this lawsuit, alleging race, color, national origin, sex, age, and disability discrimination; retaliation; and hostile work environment. She asserts that IBM is liable for violating Title VII of the Civil Rights Act of 1964 ("Title VII"), 49 U.S.C. §§ 2000e-2000e-17;[2] the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. §§ 621-634; the Americans with Disabilities Act of 1990

---

[2] Nuñez alleges in ¶ 1 of her complaint that this suit includes claims under "Title VI of the Civil Rights Act of 1964." D. App. (ECF No. 2) at 1. Because the complaint never again mentions Title VI, but does assert multiple claims under Title VII, the court will assume that this single reference to Title VI is a typographical error and is intended to refer to Title VII.

("ADA"), 42 U.S.C. §§ 12101-12213; the Family and Medical Leave Act of 1993 ("FMLA"), 29 U.S.C. §§ 2611-2654; and the Texas Labor Code ("TLC"). IBM moves to dismiss under Rule 12(b)(6) for failure to state a claim. The court is deciding the motion on the briefs, without oral argument.

II

A

"In deciding a Rule 12(b)(6) motion to dismiss, the court evaluates the sufficiency of [the plaintiff's] complaint by 'accept[ing] all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'" *Bramlett v. Med. Protective Co. of Fort Wayne*, 855 F.Supp.2d 615, 618 (N.D. Tex. 2012) (Fitzwater, C.J.) (second alteration in original) (internal quotation marks omitted) (quoting *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007)). To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*; *see also Twombly*, 550 U.S. at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level[.]"). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'shown'—'that the

pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (quoting Rule 8(a)(2)) (alteration omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 678.

B

Limitations and failure to exhaust administrative remedies are both affirmative defenses on a motion to dismiss. *See* Rule 8(c)(1) (limitations); *Clemmer v. Irving Indep. Sch. Dist.*, 2015 WL 1757358, at *3 (N.D. Tex. Apr. 17, 2015) (Fitzwater, J.) (Title VII exhaustion is an affirmative defense). To obtain a Rule 12(b)(6) dismissal based on an affirmative defense, the "successful affirmative defense [must] appear[] clearly on the face of the pleadings." *Sivertson v. Clinton*, 2011 WL 4100958, at *2 (N.D. Tex. Sept. 14, 2011) (Fitzwater, C.J.) (quoting *Clark v. Amoco Prod. Co.*, 794 F.2d 967, 970 (5th Cir. 1986)). In other words, the movant is not entitled to dismissal under Rule 12(b)(6) based on these affirmative defenses unless the nonmovant has "pleaded [herself] out of court by admitting to all of the elements of the defense." *Cochran v. Astrue*, 2011 WL 5604024, at *1 (N.D. Tex. Nov. 17, 2011) (Fitzwater, C.J.) (quoting *Sivertson*, 2011 WL 4100958, at *3).

III

The court turns first to IBM's affirmative defenses, in which it maintains that Nuñez's claims are barred by limitations and failure to exhaust administrative remedies.

A

A claimant under Title VII, the ADEA, or the ADA must file a charge of discrimination with the EEOC within 180 days of the alleged discriminatory event. *See* 42

U.S.C. § 2000e-5(e)(1); 42 U.S.C. § 12117(a); 29 U.S.C. § 626(d)(1)(A). If she does not, her claim is barred from federal court, regardless of merit. *See Noack v. YMCA of the Greater Hous. Area*, 418 Fed. Appx. 347, 351 (5th Cir. 2011) (per curiam); *Stewart v. Miss. Transp. Comm'n*, 586 F.3d 321, 328 (5th Cir. 2009). If the claimant alleges more than one discriminatory event, the 180-day deadline applies to each event. *See Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 110-13 (2002). Although discrete events that are individually time-barred cannot be bundled together with timely events to avoid the time bar, *id.* at 113, the claimant can use discrete events that occurred before the 180-day window "as background evidence in support of a timely claim," *id.*

Nuñez brings claims under Title VII, the ADEA, and the ADA based on acts of discrimination that allegedly occurred from April 2021 to the present. In light of the applicable 180-day limitations period, the court can consider only the claims based on discrete events that occurred on or after November 12, 2021. Discrete acts of alleged discrimination that occurred before that date can be used only as background evidence.

And because a claimant suing under Title VII, the ADEA, and the ADA must exhaust her administrative remedies, she "may not base a [claim in court] on an action that was not previously asserted in a formal charge of discrimination to the EEOC, or that could not 'reasonably be expected to grow out of the charge of discrimination.'" *Filer v. Donley*, 690 F.3d 643, 647 (5th Cir. 2012) (quoting *Pacheco v. Mineta*, 448 F.3d 783, 789 (5th Cir. 2006)).

IBM's exhaustion defense clearly bars one of Nuñez's Title VII claims. Nuñez's

complaint alleges that her Charge included a claim of "discrimination suffered on the basis of . . . national origin." Compl. ¶ 1. But Nuñez did not check the "National Origin" box on her original or her amended Charge form. And she did not discuss national origin in the affidavit accompanying her Charge, except to note that she is a naturalized U.S. citizen. This second omission is significant. As this court has recognized in another case, "[a]lthough failing to check a box on an EEOC charge is not of itself conclusive evidence of what claims the charging party intended to bring, [the plaintiff's] charge also lacks factual allegations relating to race discrimination or hostile work environment." *Warner v. Lear Corp.*, 2017 WL 930829, at *7 (N.D. Tex. Mar. 9, 2017) (Fitzwater, J.).

The court therefore concludes that Nuñez failed to exhaust her administrative remedies with respect to her claim of national origin discrimination, and this claim is dismissed.

B

Unlike Title VII, the ADEA, and the ADA, the FMLA does not require employees to exhaust administrative remedies before filing suit in federal court. The court therefore focuses on whether IBM has established that Nuñez's FMLA claims are time-barred; that is, whether the successful limitations defense clearly appears on the face of Nuñez's complaint.

"The general statute of limitations for FMLA violations is two years, unless the cause of action alleges a willful violation, in which case the statute of limitations is three years." *Mozingo v. Oil States Energy, Inc.*, 661 Fed. Appx. 828, 830 (5th Cir. 2016) (per curiam) (citing 29 U.S.C. § 2617(c)). "[T]o establish a willful violation of the FMLA, a plaintiff

must show that [her] employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited by statute." *Id.* (internal quotations marks omitted) (citing *Henson v. Bell Helicopter Textron, Inc.*, 128 Fed. Appx. 387, 393 (5th Cir. 2005) (per curiam)). The limitations period commences on "the date of the last event constituting the alleged violation for which the action is brought." 29 U.S.C. § 2617(c)(1).

Nuñez brings her FMLA claims based on acts that occurred between early April 2021 and April 28, 2023, when this lawsuit was filed in state court. If Nuñez can show that IBM's violation of the FMLA was "willful," her FMLA claims are timely, because all facts alleged in her complaint would fall within the three-year limitations period. IBM has not demonstrated that it appears clearly from the face of Nuñez's complaint that IBM's violations of the FMLA were not "willful" or that they are otherwise time-barred. Accordingly, the court denies IBM's motion to the extent it is based on the affirmative defense that her FMLA claims are barred by limitations.

C

A claimant under the TLC must file a complaint with the Texas Workforce Commission within 180 days after the date of the alleged unlawful employment practice. Tex. Code Ann. § 21.202(a) (2023). If she does not file that complaint, she cannot bring a corresponding claim in Texas state court or in federal district court. *See Hinkley v. Envoy Air, Inc.*, 968 F.3d 544, 552 (5th Cir. 2020); *Guar. Tr. Co. of N.Y. v. York*, 326 U.S. 99, 110 (1945) ("[I]f a plea of the statute of limitations would bar recovery in a State court, a federal court ought not to afford recovery.").

Nuñez does not allege that she ever filed a complaint with the Texas Workforce Commission on her claims under the TLC. Consequently, these claims must be dismissed.

IV

The court now considers Nuñez's remaining Title VII claims for (1) race, color, sex, and age discrimination, (2) retaliation, and (3) hostile work environment.

A

Title VII prohibits intentional discrimination by a covered employer "against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a). Sex discrimination includes discrimination "on the basis of pregnancy, childbirth, or related medical conditions." *Id.* § 2000e(k).

"Title VII discrimination can be established through direct or circumstantial evidence." *Appel v. Inspire Pharms., Inc.*, 428 Fed. Appx. 279, 281 (5th Cir. 2011). Where the plaintiff has not presented direct evidence of employment discrimination, the court requires the plaintiff to prove a *prima facie* case of discrimination by showing that (1) she is a member of a protected class; (2) she was qualified for the position; (3) she suffered an adverse employment action; and (4) others similarly situated were treated more favorably. *Id.*; *see also McDonnell Douglas Co. v. Green*, 411 U.S. 792, 802 (1973). The adverse employment action need not be an "ultimate employment decision," like hiring, granting leave, discharging, promoting, or compensating; it can also be an action that discriminates as to the "terms, conditions, or privileges of employment," like changing the employee's

work schedule or denying weekends off. *Hamilton v. Dallas County*, ___ F.4th ___, 2023 WL 5316716, at *6-8 (5th Cir. Aug. 18, 2023) (en banc).

B

Nuñez has failed to plead a plausible Title VII claim for race or color discrimination. It is undisputed that Nuñez is a member of a protected class. But she fails to plead sufficient facts for the court to draw the reasonable inference that she was a victim of race or color discrimination. For example, in addition to insufficient, conclusory statements, *see Iqbal*, 556 U.S. at 678, Nuñez's allegations of adverse employment actions—that IBM's employees "den[ied] [her] advancement, reassign[ed] her to lesser positions," and "t[ook] away [her] duties, without any corrective or disciplinary written paperwork"—are inconsistent with the facts Nuñez pleads elsewhere in her complaint. *See* Compl. ¶¶ 34-35. Nuñez nowhere alleges that IBM denied her a promotion or took away her duties, and her allegations indicate that she has not changed roles between April 2021 and today. Finally, she makes no allegations that similar people of other races were treated differently.

Accordingly, the court grants IBM's motion as to Nuñez's Title VII-based claim for race and color discrimination.

C

Nuñez has also failed to plead a plausible Title VII-based sex discrimination claim. Like her race- and color-based claims, this claim relies on conclusory statements. For example, her allegations of disparate treatment consist of little more than assertions that she "was paid significantly less than males who performed in her position," and that men "were

treated more favorably even though they had less seniority [and] were . . . issued new or better equipment, more training opportunities." Compl. ¶ 45(d).

The court grants IBM's motion as to Nuñez's Title VII-based claim for sex discrimination.

### D

Nuñez has failed to plead a plausible age discrimination claim under Title VII because Title VII does not cover age discrimination claims. *See Kremer v. Chem. Constr. Corp.*, 456 U.S. 461, 465 n.4 (1982) (noting that Title VII does not cover age discrimination claims). Consequently, IBM is entitled to dismissal of this claim.

### E

Nuñez has failed to plead a plausible Title VII claim for retaliation.

Among the elements of a *prima facie* case of retaliation are that the plaintiff suffered an adverse employment action. *See, e.g.*, *Ackel v. Nat'l Commc'ns, Inc.*, 339 F.3d 376, 385 (5th Cir. 2003). Nuñez alleges a litany of adverse employment actions—including "denying [her] advancement, reassigning her to lesser positions," "taking a tangible employment action against [her] that significantly changed [her] employment status," causing her benefits to be "significantly changed[,] ultimately desiring [her] to resign or be subject to termination which led ultimately to wrongful termination," and "illegally investigat[ing]" her. *See* Compl. ¶¶ 34, 39, 46. But these are conclusory assertions. And one of them—that she was terminated by IBM—is even apparently untrue. Moreover, Nuñez has failed to plead a causal link between her protected activity and an adverse employment action. Although she asserts that

a "causal connection exists," Compl. ¶ 46, this is a conclusory statement that is inadequate to plead a plausible claim. *See Iqbal*, 556 U.S. at 678.

Moreover, it is unclear from the complaint whether the retaliation she alleges has happened already or is anticipated in the future, as a result of her bringing this lawsuit.

IBM is entitled to dismissal of Nuñez's Title VII retaliation claim.

F

To plead a plausible Title VII-based hostile work environment claim, Nuñez must allege factual content that allows the court to draw the reasonable inference that: (1) she is a member of a protected class; (2) she was subjected to unwelcome harassment; (3) the harassment was based on a protected characteristic; (4) the harassment affected a term, condition, or privilege of employment; and (5) her employer knew or should have known of the harassment and failed to take prompt remedial action. *See EEOC v. WC&M Enters.*, 496 F.3d 393, 399 (5th Cir. 2007).

Nuñez alleges that her supervisors "creat[ed] a hostile work environment to cause [her] resignation or termination" and that IBM "created a hostile work environment through its discriminatory words and actions towards [her] because of [her] sex, race and age." Compl. ¶¶ 34, 37. In two places in the complaint, she also asserts that she experienced "harassment" at work. Compl. ¶¶ 35, 38. But Nuñez does not plausibly plead that this harassment was based on a protected characteristic, or how the harassment affected a term, condition, or privilege of her employment. Her vague and conclusory allegations are insufficient to plead a plausible hostile work environment claim.

Accordingly, her Title-VII based hostile work environment claim is dismissed.

V

The court now considers Nuñez's ADEA-based claim for age discrimination.

A

Under the ADEA, it is unlawful for an employer to "fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). "To establish an ADEA claim, '[a] plaintiff must prove by a preponderance of the evidence (which may be direct or circumstantial), that age was the "but-for" cause of the challenged employer decision.'" *Moss v. BMC Software, Inc.*, 610 F.3d 917, 922 (quoting *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 177-78 (2009)). Under *McDonnell Douglas* a plaintiff alleging only circumstantial evidence must establish a *prima facie* case of age discrimination by showing that (1) she was within the protected class (i.e., she was over 40 years old) at the time of the challenged action; (2) she was qualified for the position; (3) the defendant discharged, refused to hire, or otherwise discriminated against her; and (4) i) she was replaced by someone outside the protected class, ii) she was replaced by someone younger, or iii) the discharge, refusal to hire, or other discrimination was otherwise because of her age. *Machinchick v. PB Power, Inc.*, 398 F.3d 345, 350 (5th Cir. 2005); *McCann v. Tex. City Refin., Inc.*, 984 F.2d 667, 672 (5th Cir. 1993).

B

The parties do not dispute that Nuñez falls within the protected class. But she does not plausibly plead the other elements of a *prima facie* case. Her complaint alleges that she "(1) suffered an adverse employment action; (2) was qualified for the position; . . . and (4) was replaced by someone younger or outside the protected class, treated less favorably than a similarly situated younger employee, or otherwise discharged because of [her] age." Compl. ¶ 42. But this allegation merely recites the elements of the *prima facie* case, and provides no facts specific to Nuñez's situation. Because "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," *Iqbal*, 556 U.S. at 678, the court dismisses Nuñez's ADEA claim for age discrimination.

VI

The court now addresses Nuñez's claim that IBM violated the ADA by engaging in disability discrimination related to her high-risk pregnancy.

A

The ADA prohibits discrimination against a qualified individual because of a disability "in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). "A person is disabled under the ADA if [she] (1) has a physical or mental impairment that substantially limits one or more of the major life activities, (2) has a record of such an impairment, or (3) is regarded as having such an impairment." *Appel*, 428 Fed. Appx. at 284 (citing 42 U.S.C. § 12102(2)). The ADA defines

- 15 -

a qualified individual as an individual with a disability "who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires."  42 U.S.C. § 12111(8).  Pregnancy, absent unusual circumstances, generally is not recognized as a disability under the ADA.  29 C.F.R. app. § 1630.2(h) (2023); *Villareal v. J.E. Merit Constructors, Inc.*, 895 F. Supp. 149, 152 (S.D. Tex. 1999).  But impairments related to pregnancy may qualify as disabilities.  *Id.*

B

Nuñez appears to contend that her high-risk pregnancy qualifies her as an individual with a disability.  But she only plausibly pleads the fact of her pregnancy, not any impairment related to pregnancy.  She has therefore failed to plead a plausible disability discrimination claim under the ADA, and this claim is dismissed.

VII

The court next addresses Nuñez's FMLA claims.  Nuñez alleges that IBM violated her right to FMLA leave and also retaliated against her for protected conduct under the FMLA.

A

The FMLA entitles an employee to take up to twelve weeks of unpaid leave per year for, *inter alia*, "the care of a newborn son or daughter" or "the employee's own serious health condition when the condition interferes with the employee's ability to perform at work." *Coleman v. Ct. App. of Md.*, 566 U.S. 30, 34 (2012) (citing 29 U.S.C. § 2612(a)(1)).  Upon return from leave, the FMLA also entitles the employee "to be restored by the employer to the position of employment held by the employee when the leave was commenced[ ] or . . . to be

restored to an equivalent position." *Baumeister v. AIG Global Inv. Corp.*, 420 Fed. Appx. 351, 354 (5th Cir. 2011) (citing 29 U.S.C. § 2614).

An employer violates the FMLA when it "interfere[s] with, restrain[s], or den[ies] the exercise of or the attempt to exercise, any right provided" by the statute. 29 U.S.C. § 2615(a)(1). Such illegal actions include refusing to authorize FMLA leave, discouraging an employee from using leave, and changing an employee's essential job functions to preclude taking leave. 29 C.F.R. § 825.220(b) (2023). The FMLA also prohibits retaliation, making it "unlawful for any employer to discharge or in any other manner discriminate against any individual" for filing charges under the FMLA or testifying in an FMLA proceeding. 29 U.S.C. § 2615. To have a valid retaliation claim, a plaintiff must show that (1) she engaged in a protected activity, (2) she suffered an adverse employment action, and (3) there is a causal link between the protected activity and the adverse employment action. *Ion v. Chevron USA, Inc.*, 731 F.3d 379, 390 (5th Cir. 2013); *Richardson v. Monitronics Int'l, Inc.*, 434 F.3d 327, 332 (5th Cir. 2005).

B

Nuñez alleges that IBM interfered with her exercise of her FMLA rights by "hinder[ing] an eligible employee from using FMLA by discouraging them from requesting leave, changing their hours, harassing plaintiff while on FMLA." Compl. ¶ 55. Although this statement includes a few general examples of FMLA violations, it does little more than recite the legal standard, and seems at odds with the specific facts that the complaint alleges elsewhere. The complaint alleges that Nuñez received ten weeks of FMLA leave. Nuñez's

EEOC affidavit also includes screenshots of her message reminding colleagues that she would presently commence her leave, a few emails that Nuñez received while she was on leave, and La Rose's message welcoming her back to work after her leave. None of these documents shows on its face that IBM refused to authorize Nuñez's leave, discouraged her from taking it, or took other related adverse employment actions.

Nuñez also alleges an FMLA retaliation claim, asserting that she "was disciplined and/or denied promotions as a means of retaliation for leave requests or for filing FMLA complaints." Compl. ¶ 56. This is also a threadbare pleading of the legal standard. Although the court credits Nuñez's allegation that she did, indeed, file leave requests and FMLA complaints, this statement does not plead sufficient facts for the court to draw the reasonable inference that IBM took specific adverse actions as a result of those filings.

The court therefore dismisses Nuñez's FMLA-based claim.

## VIII

Although the court is dismissing Nuñez's claims, it will permit her to replead most of them.

Nuñez filed this case in state court, under the pleading standards that govern in that forum. IBM filed the instant motion to dismiss shortly after removing the case. "This court has adopted a nearly unwavering practice of permitting plaintiffs to replead under the federal pleading standards when it dismissed removed cases that were pleaded under state standards." *Schrader-Scalf v. CitiMortgage, Inc.*, 2013 WL 625745, at *3 (N.D. Tex. Feb. 20, 2013) (Fitzwater, C.J.).

Leave to amend is unwarranted for Nuñez's (1) Title VII national origin discrimination claim, because she has not exhausted her administrative remedies; (2) Title VII age discrimination claim, because there is no such claim available under Title VII; and (3) TLC claims, because she has not exhausted her administrative remedies. But the court grants Nuñez leave to replead her other claims by filing a first amended complaint within 28 days of the date this memorandum opinion and order is filed.

* * *

The court grants IBM's motion to dismiss and also grants Nuñez leave to replead.

**SO ORDERED**.

September 14, 2023.

SIDNEY A. FITZWATER
SENIOR JUDGE