IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| ROSALVA NUÑEZ-RENCK, | § | |
| | § | |
| Plaintiff, | § | |
| | § | Civil Action No. 3:23-CV-1308-D |
| VS. | § | |
| | § | |
| INTERNATIONAL BUSINESS | § | |
| MACHINES CORPORATION (IBM), | § | |
| | § | |
| Defendant. | § | |

MEMORANDUM OPINION
AND ORDER

In this removed action, plaintiff Rosalva Nuñez-Renck ("Nuñez") sues her employer, International Business Machines Corporation ("IBM"), for discrimination under several federal antidiscrimination statutes. IBM moves to dismiss under Fed. R. Civ. P. 12(b)(6) for failure to state a claim on which relief can be granted. For the reasons that follow, the court grants the motion but also grants Nuñez a final opportunity to replead.

I

The relevant background facts of this case are largely set out in a prior memorandum opinion and order[1] and need not be repeated at length for purposes of deciding IBM's motion to dismiss.

After the court granted IBM's previous motion to dismiss, Nuñez timely filed a first amended complaint ("amended complaint") that alleges race, color, sex, age, and disability

---

[1]*See Nuñez-Renck v. Int'l Bus. Machs. Corp. (Nuñez I)*, 2023 WL 5986463, at *1-2 (N.D. Tex. Sept. 14, 2023) (Fitzwater, J.).

discrimination; retaliation; and hostile work environment.  Nuñez brings these claims under

Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq*.;[2] the Age

Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. § 621 *et seq*.; the

Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12101 *et seq*.; and the Family

and Medical Leave Act of 1993 ("FMLA"), 29 U.S.C. § 2601 *et seq.*

Nuñez's amended complaint includes only a few factual allegations that are not

asserted in her state-court original pleading-complaint ("complaint").[3]  First, Nuñez alleges

that, until a certain point in her employment at IBM, she was paid substantially less than non-

minority colleagues.  She also alleges that she was paid less than every man on the team

headed by her manager, David La Rose ("La Rose"), despite her higher sales and longer

tenure.  Nuñez asserts that, at some point, she received a pay increase and a one-time

retention bonus.  She does not clearly allege when this pay increase occurred.  In one place,

the amended complaint asserts that the pay increase occurred in August 2021; but in another,

it alleges that the pay increase occurred after she complained to IBM Human Resources and

---

[2]As she did in her complaint, Nuñez alleges in ¶ 1 of the amended complaint that this suit includes claims under "Title VI of the Civil Rights Act of 1964." D. App. (ECF No. 2) at 1.  Because the amended complaint never again mentions Title VI, but does assert multiple claims under Title VII, the court will assume that this single reference to Title VI is a typographical error and is intended to refer to Title VII.

[3]The court recounts the background facts favorably to Nuñez as the nonmovant.  In deciding a Rule 12(b)(6) motion to dismiss, "[t]he 'court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'"  *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Martin K. Eby Constr. Co. v. Dall. Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004) (addressing Rule 12(b)(6) standard)).

filed a Charge of Discrimination ("Charge") with the Equal Employment Opportunity Commission ("EEOC"), events that allegedly occurred in March and May 2022. Nuñez also alleges that La Rose only recommended her for a promotion so that IBM could maintain its underrepresented minority quota after an African American employee resigned.

Finally, Nuñez alleges that she "suffered pregnancy-related impairment, such as preeclampsia or sciatica." Am. Compl. ¶ 53. She asserts that IBM Human Resources sent her an email on April 15, 2021 confirming her requested maternity leave and providing her IBM employee health and wellness resources, which she alleges served as confirmation that IBM was aware that she had a high-risk pregnancy.

IBM moves to dismiss Nuñez's amended complaint under Rule 12(b)(6) for failure to state a claim on which relief can be granted. The court is deciding the motion on the briefs, without oral argument.

## II

### A

"In deciding a Rule 12(b)(6) motion to dismiss, the court evaluates the sufficiency of [the plaintiff's] complaint by 'accept[ing] all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'" *Bramlett v. Med. Protective Co. of Fort Wayne, Ind.*, 855 F.Supp.2d 615, 618 (N.D. Tex. 2012) (Fitzwater, C.J.) (second alteration in original) (internal quotation marks omitted) (quoting *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007)). To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v.*

- 3 -

*Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*; *see also Twombly*, 550 U.S. at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level[.]"). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'shown'—'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (quoting Rule 8(a)(2)) (alteration omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 678.

## B

Failure to exhaust administrative remedies is an affirmative defense. *See, e.g.*, *Clemmer v. Irving Indep. Sch. Dist.*, 2015 WL 1757358, at \*3 (N.D. Tex. Apr. 17, 2015) (Fitzwater, J.) (Title VII exhaustion is an affirmative defense), *aff'd sub nom. Chen v. Irving Indep. Sch. Dist.*, 689 Fed. Appx. 379 (5th Cir. 2017). To obtain a Rule 12(b)(6) dismissal based on an affirmative defense, the "successful affirmative defense [must] appear[] clearly on the face of the pleadings." *Sivertson v. Clinton*, 2011 WL 4100958, at \*2 (N.D. Tex. Sept. 14, 2011) (Fitzwater, C.J.) (quoting *Clark v. Amoco Prod. Co.*, 794 F.2d 967, 970 (5th Cir. 1986)). In other words, the movant is not entitled to dismissal under Rule 12(b)(6) based on the affirmative defense unless the nonmovant has "pleaded [herself] out of court by

- 4 -

admitting to all of the elements of the defense." *Cochran v. Astrue*, 2011 WL 5604024, at *1 (N.D. Tex. Nov. 17, 2011) (Fitzwater, C.J.) (quoting *Sivertson*, 2011 WL 4100958, at *3).

## III

The court turns first to IBM's single affirmative defense: that Nuñez failed to exhaust administrative remedies with respect to her ADA disability discrimination claim.

## A

A claimant under the ADA must file a charge of discrimination with the EEOC within 180 days of the alleged discriminatory event. *See* 42 U.S.C. § 12117(a).[4]  If she does not, her claim is barred from federal court, regardless of merit. *See Noack v. YMCA of the Greater Hous. Area*, 418 Fed. Appx. 347, 351 (5th Cir. 2011) (per curiam); *Stewart v. Miss. Transp. Comm'n*, 586 F.3d 321, 328 (5th Cir. 2009).  A plaintiff "may not base a [claim in court] on an action that was not previously asserted in a formal charge of discrimination to the EEOC, or that could not 'reasonably be expected to grow out of the charge of discrimination.'" *Filer v. Donley*, 690 F.3d 643, 647 (5th Cir. 2012) (quoting *Pacheco v. Mineta*, 448 F.3d 783, 789 (5th Cir. 2006)).

## B

Nuñez has pleaded herself out of court by admitting to all of the elements of this affirmative defense.  She did not check the "Disability" box on her original or her amended

---

[4]The same is true for Title VII and the ADEA. *See* 42 U.S.C. § 2000e-5(e)(1); 29 U.S.C. § 626(d)(1)(A).

Charge form, both of which are properly considered in deciding IBM's motion to dismiss.[5]

She also did not explicitly discuss disability anywhere in her affidavits accompanying the

Charge, or allege any medical conditions that could plausibly constitute a qualified disability

under the ADA.  This is a significant omission.  As this court has recognized, "[a]lthough

failing to check a box on an EEOC charge is not of itself conclusive evidence of what claims

the charging party intended to bring," the fact that a plaintiff's Charge of Discrimination

"also lacks factual allegations relating to [the claim]" can make it clear that she has failed to

exhaust administrative remedies.  *Warner v. Lear Corp.*, 2017 WL 930829, at *7 (N.D. Tex.

Mar. 9, 2017) (Fitzwater, J.).

    The court therefore concludes that Nuñez failed to exhaust her administrative

remedies with respect to her ADA disability discrimination claim, and this claim is

dismissed.

_____

    [5]"If, on a motion under 12(b)(6) or 12(c), matters outside the pleadings are presented
to and not excluded by the court, the motion must be treated as one for summary judgment
under Rule 56."  Rule 12(d).  "But uncontested documents referred to in the pleadings may
be considered by the Court without converting the motion to one for summary judgment,
even when the documents are not physically attached to the complaint."  *Great Lakes Ins.,
S.E. v. Gray Grp. Invs., LLC*, 550 F.Supp.3d 364, 370 (E.D. La. 2021) (citing *Great Plains
Tr. Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 313 (5th Cir. 2002)).
Furthermore, "[e]ven [if an] EEOC charge is a matter outside the pleading, judicial notice
of it may be taken as a matter of public record when deciding a Rule 12(b)(6) motion,
especially [if] its authenticity is uncontested."  *King v. Life Sch.*, 809 F.Supp.2d 572, 579 n.1
(N.D. Tex. 2011) (Ramirez, J.) (citing *Cinel v. Connick*, 15 F.3d 1338, 1343 n.6 (5th Cir.
1994)).

IV

The court now considers Nuñez's Title VII claims for (1) race, color, and sex discrimination, (2) retaliation, and (3) hostile work environment.[6]

A

The court turns first to Nuñez's race, color, and sex discrimination claims.

1

Title VII prohibits intentional discrimination by a covered employer "against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a). Sex discrimination includes discrimination "on the basis of pregnancy, childbirth, or related medical conditions." *Id.* § 2000e(k).

"Title VII discrimination can be established through direct or circumstantial evidence." *Appel v. Inspire Pharms., Inc.*, 428 Fed. Appx. 279, 281 (5th Cir. 2011). When the plaintiff has not presented direct evidence of employment discrimination, she must make a *prima facie* showing of discrimination by establishing that (1) she is a member of a protected class; (2) she was qualified for the position; (3) she suffered an adverse employment action; and (4) others similarly situated were treated more favorably. *Id.*; *see*

---

[6]The amended complaint's discussion of Nuñez's Title VII claims at times references an age discrimination claim. In *Nuñez I* the court dismissed Nuñez's Title VII age discrimination claim because there is no such claim available under Title VII. *See Nuñez I*, 2023 WL 5986463, at *5. The court therefore treats all references to age discrimination in the Title VII context as mistaken and does not consider them in evaluating IBM's motion to dismiss.

*also McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973).   The adverse employment action need not be an "ultimate employment decision," like hiring, granting leave, discharging, promoting, or compensating; it can also be an action that discriminates as to the "terms, conditions, or privileges of employment," like changing the employee's work schedule or denying weekends off.  *Hamilton v. Dallas County*, 79 F.4th 494, 502-06 (5th Cir. 2023) (en banc).

## 2

Nuñez has failed to plead a plausible Title VII claim for race or color discrimination.

Nuñez is a member of a protected class.  But she has failed to plead sufficient facts for the court to draw the reasonable inference that she was the victim of race or color discrimination.   She makes the same insufficient, conclusory allegations about her qualifications for her position as she did in her complaint.  *See Iqbal*, 556 U.S. at 678.  And while she does allege that there was a pay disparity between her and non-minority employees, she pleads no facts that would enable the court to draw the reasonable inference that she and the non-minority employees were similarly situated.

Accordingly, the court grants IBM's motion as to Nuñez's Title VII-based claim for race and color discrimination.

## 3

Nuñez has also failed to plead a plausible Title VII claim for sex discrimination.

Like Nuñez's race and color discrimination claims, this claim relies on conclusory assertions.  Nuñez's allegation of disparate treatment consists only of the assertion that she

was paid less than the men on her team, despite her higher sales and longer tenure.  This allegation is inadequate to state a *prima facie* case of sex discrimination.

Accordingly, the court grant's IBM's motion as to Nuñez's Title VII sex discrimination claim.

B

Nuñez has failed to plead a plausible Title VII claim for retaliation.

To plead a plausible Title VII retaliation claim, the plaintiff "must make a *prima facie* showing: (1) that the plaintiff engaged in activity protected by Title VII, (2) that an adverse employment action occurred, and (3) that a causal link existed between the protected activity and the adverse action."  *Banks v. E. Baton Rouge Par. Sch. Bd.*, 320 F.3d 570, 575 (5th Cir. 2003) (internal quotation marks omitted) (citation omitted).  "Protected activity is defined as opposition to any practice rendered unlawful by Title VII, including making a charge, testifying, assisting, or participating in any investigation, proceeding, or hearing under Title VII."  *Green v. Adm'rs of Tulane Educ. Fund*, 284 F.3d 642, 657 (5th Cir. 2002) (citing 42 U.S.C. § 2000e-3(a)).

Nuñez does not clearly identify the protected activity in which she engaged.  Although she apparently testified for IBM in the *Kingston v. IBM* retaliation lawsuit, it is not evident that her role in that lawsuit constituted opposition to employer practices made unlawful by Title VII.  She testified *on behalf of IBM*—not on behalf of the individual opposing IBM's practices—and neither her amended complaint nor the Ninth Circuit's opinion in that case would permit this court to draw the reasonable inference that she opposed IBM in that

- 9 -

context.  Moreover, assuming that her filing of an internal complaint with IBM Human Resources and a Charge of Discrimination with the EEOC constitute protected activity, Nuñez has failed to plausibly plead a causal link between that activity and any adverse employment action.  Although the burden to plead causation at the *prima facie* stage is "minimal," *see Khanna v. Park Place Motorcars of Hous., Ltd.*, 2000 WL 1801850, at *4 (N.D. Tex. Dec. 6, 2000) (Fitzwater, J.), the amended complaint alleges *no* facts indicating that IBM took action against her *after* she filed these documents.  Indeed, it does not include any events that occurred in the period after she filed them.

Moreover, it is still unclear from the amended complaint whether Nuñez's retaliation claim is based on protected conduct that has already occurred or on potential future protected conduct, as a result of her bringing this lawsuit.  Because retaliation is a claim that must be based on employer actions that have already occurred, she has no valid claim for anticipated adverse employment actions that IBM may take in the future.

IBM is therefore entitled to dismissal of Nuñez's Title VII-based retaliation claim.

C

Nuñez has failed to plead a plausible Title VII claim for hostile work environment.

Nuñez alleges that "her supervisors created a hostile work environment in [an] attempt to cause her resignation or termination and that IBM created a hostile work environment through its discriminatory words and actions towards her because of sex, race[,] age and engaging in a protected activity by participating as a witness in [the] Discrimination trial." Am. Compl. ¶ 44.

- 10 -

To establish a claim for a sexually hostile work environment because of harassment by a supervisor, Nuñez must show the following:

> (1) [she] belongs to a protected group; (2) [she] was subject to unwelcome sexual harassment; (3) [t]he harassment complained of was based upon sex; [and] (4) [t]he harassment complained of affected a "term, condition or privilege of employment," i.e., the sexual harassment must be sufficiently severe or pervasive so as to alter the conditions of employment and create an abusive working environment[.]

*Watts v. Kroger Co.*, 170 F.3d 505, 509 (5th Cir. 1999) (on rehearing) (citing *Jones v. Flagship Int'l*, 793 F.2d 714, 719-20 (5th Cir. 1986)).

To state a plausible Title VII hostile work environment claim based on conduct of a non-supervisor, Nuñez must allege factual content that allows the court to draw the reasonable inference that: (1) she is a member of a protected class; (2) she was subjected to unwelcome harassment; (3) the harassment was based on a protected characteristic; (4) the harassment affected a term, condition, or privilege of employment; and (5) her employer knew or should have known of the harassment and failed to take prompt remedial action. *See EEOC v. WC&M Enters.*, 496 F.3d 393, 399 (5th Cir. 2007) (citations omitted).

Nuñez alleges in several places in her amended complaint that she experienced "harassment" at work. Am Compl. ¶¶ 33, 37, 57. But she does not plead specific facts indicating the discriminatory words or actions to which she was subjected, or plausibly plead that the harassment affected a term, condition, or privilege of her employment. Her vague and conclusory allegations are still insufficient to plead a plausible hostile work environment claim, whether based on the conduct of a supervisor or a non-supervisory coworker.

- 11 -

Accordingly, Nuñez's Title VII-based hostile work environment claim is dismissed.

V

The court now considers Nuñez's ADEA-based claim for age discrimination.

A

Under the ADEA, it is unlawful for an employer to "fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). "To establish an ADEA claim, '[a] plaintiff must prove by a preponderance of the evidence (which may be direct or circumstantial), that age was the "but-for" cause of the challenged employer decision.'" *Moss v. BMC Software, Inc.*, 610 F.3d 917, 922 (quoting *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 177-78 (2009)). Under *McDonnell Douglas* a plaintiff alleging only circumstantial evidence must establish a *prima facie* case of age discrimination by showing that (1) she was within the protected class (i.e., she was over 40 years old) at the time of the challenged action; (2) she was qualified for the position; (3) the defendant discharged, refused to hire, or otherwise discriminated against her; and (4) (i) she was replaced by someone outside the protected class, (ii) she was replaced by someone younger, or (iii) the discharge, refusal to hire, or other discrimination was otherwise because of her age. *Machinchick v. PB Power, Inc.*, 398 F.3d 345, 350 (5th Cir. 2005) (citations omitted); *McCann v. Tex. City Refin., Inc.*, 984 F.2d 667, 672 (5th Cir. 1993) (per curiam).

- 12 -

B

Nuñez has not plausibly pleaded a *prima facie* case of age discrimination under the ADEA.

The amended complaint alleges that

> (1) she was within the protected class (she is over 40 years old) at the time of the challenged action; (2) she was qualified for the position she held with IBM before the disparate treatment[;] (3) the defendant otherwise discriminated against her through pay and created a hostile work environment; and (4) other discrimination was otherwise because of her age.

Am. Compl. ¶ 47.  This allegation consists of conclusory statements: it merely recites a few of the elements of the *prima facie* case, and provides no facts specific to Nuñez's situation. It is settled that "a formulaic recitation of the elements of a cause of action will not do." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citation omitted).

Accordingly, the court dismisses Nuñez's ADEA claim for age discrimination.

VI

The court next addresses Nuñez's FMLA claims.  Nuñez again alleges that IBM violated her right to FMLA leave and also retaliated against her for protected conduct under the FMLA.

- 13 -

A

The FMLA entitles an employee to take up to twelve weeks of unpaid leave per year for, *inter alia*, "the care of a newborn son or daughter" or "the employee's own serious health condition when the condition interferes with the employee's ability to perform at work." *Coleman v. Ct. App. of Md.*, 566 U.S. 30, 34 (2012) (citing 29 U.S.C. § 2612(a)(1)).  The FMLA also entitles an employee returning from leave "to be restored by the employer to the position of employment held by the employee when the leave was commenced[ ] or . . . to be restored to an equivalent position."  *Baumeister v. AIG Glob. Inv. Corp.*, 420 Fed. Appx. 351, 354 (5th Cir. 2011) (citing 29 U.S.C. § 2614) (alterations in original).

It is unlawful for an employer to "interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided" by the FMLA.  29 U.S.C. § 2615(a)(1).  Such illegal actions include refusing to authorize FMLA leave, discouraging an employee from using leave, and changing an employee's essential job functions to preclude taking leave. 29 C.F.R. § 825.220(b) (2023).  The FMLA also prohibits retaliation, making it "unlawful for any employer to discharge or in any other manner discriminate against any individual" for filing charges under the FMLA or testifying in an FMLA proceeding.  29 U.S.C. § 2615. To establish a valid retaliation claim, a plaintiff must show: (1) she engaged in a protected activity; (2) she suffered an adverse employment action; and (3) there is a causal link between the protected activity and the adverse employment action. *Ion v. Chevron USA, Inc.*, 731 F.3d 379, 390 (5th Cir. 2013) (citation omitted); *Richardson v. Monitronics Int'l, Inc.*, 434 F.3d 327, 332 (5th Cir. 2005).

- 14 -

B

Nuñez again alleges that IBM interfered with her exercise of her FMLA rights by "hinder[ing] an eligible employee from using FMLA by discouraging them from requesting leave, changing their hours, harassing plaintiff while on FMLA."  Am. Compl. ¶ 57.  She also asserts that IBM "willfully attempted, by and through Mr. La Rose, to interfere with [her] FMLA leave by contacting her and having multiple meetings requesting her input and participation"—presumably referring to the emails and calendar invitation La Rose sent her while she was on maternity leave.  Am. Compl. ¶ 63.

As the court explained in *Nuñez I*, Nuñez's first allegation does little more than recite the legal standard, and is at odds with the specific facts that she alleges elsewhere.  In the amended complaint, Nuñez alleges that she received ten weeks of FMLA leave.  But she alleges no facts that would enable the court to draw the reasonable inference that IBM discouraged her from taking leave or changed her job function or hours to prevent her from taking leave.  And Nuñez's receipt of three work emails while on leave—including one that informed her that she would be promoted on her return—does not constitute the kind of interference with leave that the FMLA prohibits.

Nuñez also pleads retaliation once again: that she "was disciplined and/or denied promotions as a means of retaliation for leave requests or for filing FMLAs."  Am. Compl. ¶ 58.  This is a threadbare recital of the legal standard: the amended complaint does not plead sufficient facts for the court to draw the reasonable inference that Nuñez was disciplined as a result of requesting FMLA leave or that any alleged denial of a promotion was a direct

- 15 -

result of Nuñez's requesting leave or filing FMLAs.

The court therefore dismisses Nuñez's FMLA-based claim.

VII

In the alternative to her opposition to IBM's motion, Nuñez requests leave to amend. IBM opposes this request, primarily on the basis that granting leave would be futile and would unduly burden the court and IBM.  IBM points out that the court in *Nuñez I* identified the shortcomings in Nuñez's complaint and provided a roadmap for Nuñez to cure them, but she has still failed to do so.

Although the court is granting IBM's motion to dismiss, and although the court has already given Nuñez one opportunity to amend, it will grant Nuñez a final opportunity to replead.

While Nuñez has filed both a complaint and an amended complaint, the court's decision in *Nuñez I* was addressed to a state-court pleading.  Today's decision is the first to identify deficiencies in a pleading filed under the federal standard.

Moreover, "district courts often afford plaintiffs at least one opportunity to cure pleading deficiencies before dismissing a case, unless it is clear that the defects are incurable or the plaintiffs advise the court that they are unwilling or unable to amend in a manner that will avoid dismissal."  *In re Am. Airlines, Inc., Privacy Litig*., 370 F.Supp.2d 552, 567-68 (N.D. Tex. 2005) (Fitzwater, J.) (quoting *Great Plains Tr. Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002)).  Nuñez has not stated that she cannot, or is unwilling to, cure the defects that the court has identified.  Indeed, she has explicitly

requested the opportunity to amend.  And plaintiffs are sometimes able to plead plausible claims for relief when amending after multiple motions to dismiss have been granted.  *See, e.g., Reneker v. Offill*, 2010 WL 1541350, at *2, *7 (N.D. Tex. Apr. 19, 2010) (Fitzwater, C.J.) (concluding, after twice granting motions to dismiss, that plaintiff's second amended complaint stated claim on which relief could be granted).

The court therefore grants Nuñez 28 days from the date this memorandum opinion and order is filed to file a second amended complaint.

*   *   *

For the reasons explained, the court grants IBM's motion to dismiss but also grants Nuñez a final opportunity to replead.

**SO ORDERED**.

December 6, 2023.

_____
SIDNEY A. FITZWATER
SENIOR JUDGE

- 17 -