IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| ROSALVA NUÑEZ-RENCK, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | Civil Action No. 3:23-CV-1308-D |
| | § | |
| INTERNATIONAL BUSINESS | § | |
| MACHINES CORPORATION (IBM), | § | |
| | § | |
| Defendant. | § | |

MEMORANDUM OPINION
AND ORDER

In this removed action, plaintiff Rosalva Nuñez-Renck ("Nuñez") sues her employer, International Business Machines Corporation ("IBM"), for discrimination under several federal antidiscrimination statutes. IBM moves to dismiss under Fed. R. Civ. P. 12(b)(6) for failure to state a claim on which relief can be granted. For the reasons that follow, the court grants the motion as to all claims except Nuñez's pay claims under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.*

I

The relevant background facts of this case are largely set out in two prior memorandum opinions and orders and need not be repeated at length to decide IBM's motion to dismiss. *See Nuñez-Renck v. Int'l Bus. Machs. Corp. (Nuñez I)*, 2023 WL 5986463, at *1-2 (N.D. Tex. Sept. 14, 2023) (Fitzwater, J.); *Nuñez-Renck v. Int'l Bus. Machs. Corp. (Nuñez II)*, 2023 WL 8464950, at *1-2 (N.D. Tex. Dec. 6, 2023) (Fitzwater, J.).

After the court granted IBM's motion to dismiss Nuñez's first amended complaint,

Nuñez timely filed a second amended complaint that alleges race, color, sex, age, and disability discrimination; retaliation; and a hostile work environment. Nuñez brings these claims under Title VII;[1] the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. § 621 *et seq.*; the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12101 *et seq.*; and the Family and Medical Leave Act of 1993 ("FMLA"), 29 U.S.C. § 2601 *et seq.*

IBM moves to dismiss Nuñez's second amended complaint under Rule 12(b)(6) for failure to state a claim on which relief can be granted. Nuñez did not respond in writing to the motion, but the court held a hearing at which Nuñez's counsel appeared and presented oral argument.

II

A

"In deciding a Rule 12(b)(6) motion to dismiss, the court evaluates the sufficiency of [the plaintiff's] complaint by 'accept[ing] all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'" *Bramlett v. Med. Protective Co. of Fort Wayne, Ind.*, 855 F.Supp.2d 615, 618 (N.D. Tex. 2012) (Fitzwater, C.J.) (second alteration in original) (internal quotation marks omitted) (quoting *In re Katrina Canal Breaches Litig.*, 495 F.3d

---

[1] As she did in her state-court original petition and her first amended complaint, Nuñez alleges in ¶ 4 of the second amended complaint that this suit includes claims under "Title VI of the Civil Rights Act of 1964." 2d. Am. Compl. (ECF No. 30) at 3 ¶ 4. Because the second amended complaint never again mentions Title VI, but does assert multiple claims under Title VII, the court will assume that this single reference to Title VI is a typographical error and is intended to refer to Title VII.

191, 205 (5th Cir. 2007)).  To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*; *see also Twombly*, 550 U.S. at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level[.]").  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'shown'—'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (quoting Rule 8(a)(2)) (alteration omitted).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 678.

B

Failure to exhaust administrative remedies is an affirmative defense.  *See, e.g.*, *Clemmer v. Irving Indep. Sch. Dist.*, 2015 WL 1757358, at *3 (N.D. Tex. Apr. 17, 2015) (Fitzwater, J.) (Title VII exhaustion is an affirmative defense), *aff'd*, 689 Fed. Appx. 379 (5th Cir. 2017).  To obtain a Rule 12(b)(6) dismissal based on an affirmative defense, the "successful affirmative defense [must] appear[] clearly on the face of the pleadings." *Sivertson v. Clinton*, 2011 WL 4100958, at *2 (N.D. Tex. Sept. 14, 2011) (Fitzwater, C.J.) (quoting *Clark v. Amoco Prod. Co.*, 794 F.2d 967, 970 (5th Cir. 1986)).  In other words, the

movant is not entitled to dismissal under Rule 12(b)(6) based on the affirmative defense unless the nonmovant has "pleaded [herself] out of court by admitting to all of the elements of the defense." *Cochran v. Astrue*, 2011 WL 5604024, at *1 (N.D. Tex. Nov. 17, 2011) (Fitzwater, C.J.) (quoting *Sivertson*, 2011 WL 4100958, at *3).

III

The court turns first to IBM's single affirmative defense: that Nuñez failed to exhaust administrative remedies with respect to her ADA disability discrimination claim.

A

A claimant under the ADA must file a charge of discrimination with the EEOC within 180 days of the alleged discriminatory event. *See* 42 U.S.C. § 12117(a). If she does not, her claim is barred from federal court, regardless of merit. *See Noack v. YMCA of the Greater Hous. Area*, 418 Fed. Appx. 347, 351 (5th Cir. 2011) (per curiam); *Stewart v. Miss. Transp. Comm'n*, 586 F.3d 321, 328 (5th Cir. 2009). A plaintiff "may not base a [claim in court] on an action that was not previously asserted in a formal charge of discrimination to the EEOC, or that could not 'reasonably be expected to grow out of the charge of discrimination.'" *Filer v. Donley*, 690 F.3d 643, 647 (5th Cir. 2012) (quoting *Pacheco v. Mineta*, 448 F.3d 783, 789 (5th Cir. 2006)).

B

Nuñez has pleaded herself out of court by admitting to all of the elements of this affirmative defense. As the court noted in *Nuñez II*, Nuñez did not check the "Disability" box on either her original or her amended Charge form, both of which are properly

- 4 -

considered in deciding IBM's motion to dismiss.[2]  She also did not explicitly discuss disability anywhere in her affidavits accompanying the Charge, or allege any medical conditions that could plausibly constitute a qualified disability under the ADA.  This is a significant omission.  As this court has recognized, "[a]lthough failing to check a box on an EEOC charge is not of itself conclusive evidence of what claims the charging party intended to bring, [the plaintiff's] charge also lacks factual allegations relating to race discrimination or hostile work environment."  *Warner v. Lear Corp.*, 2017 WL 930829, at *7 (N.D. Tex. Mar. 9, 2017) (Fitzwater, J.).

The court therefore concludes that Nuñez has failed to exhaust her administrative remedies with respect to her ADA disability discrimination claim, and this claim is dismissed.

---

[2]"If, on a motion under 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." Rule 12(d).  "But uncontested documents referred to in the pleadings may be considered by the Court without converting the motion to one for summary judgment, even when the documents are not physically attached to the complaint." *Great Lakes Ins., S.E. v. Gray Grp. Invs., LLC*, 550 F.Supp.3d 364, 370 (E.D. La. 2021) (citing *Great Plains Tr. Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 313 (5th Cir. 2002). Furthermore, "[e]ven [if an] EEOC charge is a matter outside the pleading, judicial notice of it may be taken as a matter of public record when deciding a Rule 12(b)(6) motion, especially [if] its authenticity is uncontested." *King v. Life Sch.*, 809 F.Supp.2d 572, 579 n.1 (N.D. Tex. 2011) (Ramirez, J.) (citing *Cinel v. Connick*, 15 F.3d 1338, 1343 n.6 (5th Cir. 1994)).

IV

The court now considers Nuñez's Title VII claims for (1) sex, race, and color discrimination, (2) retaliation, and (3) hostile work environment.[3]

A

The court turns first to Nuñez's sex, race, and color discrimination claims.

1

Title VII prohibits intentional discrimination by a covered employer "against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a). Sex discrimination includes discrimination "on the basis of pregnancy, childbirth, or related medical conditions." *Id.* § 2000e(k).[4]

---

[3]The Title VII claims asserted in the second amended complaint sometimes refer to an age discrimination claim. In *Nuñez I* the court dismissed Nuñez's Title VII age discrimination claim because there is no such claim available under Title VII. *See Nuñez I*, 2023 WL 5986463, at *5. The court therefore treats all references to Title VII-based age discrimination claims as inadvertent errors and does not consider them in evaluating IBM's motion to dismiss.

[4]The second amended complaint contains one paragraph that appears to plead a "Pregnancy Discrimination Act" claim. *See* 2d. Am. Compl. ¶ 85. And Nuñez's counsel referred to such a claim at oral argument. But the Pregnancy Discrimination Act does not provide a separate cause of action; rather, it "added new language to Title VII's definitions subsection," specifying that Title VII's "ter[m] 'because of sex' . . . include[s] . . . because of or on the basis of pregnancy, childbirth, or related medical conditions." *Young v. United Parcel Serv., Inc.*, 575 U.S. 206, 212 (2015) (quoting 42 U.S.C. § 2000e(k)). The Act also specifies that "women affected by pregnancy, childbirth, or related medical conditions shall be treated the same for all employment-related purposes . . . as other persons not so affected but similar in their ability or inability to work[.]" 42 U.S.C. § 2000e(k). Accordingly, the court does not analyze any allegations by Nuñez related to the Pregnancy Discrimination Act

"Title VII discrimination can be established through direct or circumstantial evidence." *Appel v. Inspire Pharms., Inc.*, 428 Fed. Appx. 279, 281 (5th Cir. 2011).  When the plaintiff has not presented direct evidence of employment discrimination, she must make a *prima facie* showing of discrimination by establishing that (1) she is a member of a protected class; (2) she was qualified for the position; (3) she suffered an adverse employment action; and (4) others similarly situated were treated more favorably.  *Id.*; *see also McDonnell Douglas Co. v. Green*, 411 U.S. 792, 802 (1973).[5]  The adverse employment action need not be an "ultimate employment decision," like hiring, granting leave, discharging, promoting, or compensating; it can also be an action that discriminates as to the

---

as being related to a separate cause of action; instead, the court folds its analysis of pregnancy discrimination into its analysis of Nuñez's Title VII sex discrimination claim.

[5]The familiar *McDonnell Douglas* standard for evaluating employment discrimination claims is an evidentiary framework, not a pleading standard.  *See Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 510 (2002).  Accordingly, "a plaintiff need not make out a *prima facie* case of discrimination in order to survive a Rule 12(b)(6) motion to dismiss for failure to state a claim." *Raj v. La. State Univ.*, 714 F.3d 322, 331 (5th Cir. 2013) (citing *Swierkiewicz*, 534 U.S. at 510-12); *see also, e.g., Chhim v. Univ. of Tex. at Austin*, 836 F.3d 467, 470 (5th Cir. 2016) ("Although Chhim did not have to submit evidence to establish a *prima facie* case of discrimination at this stage, he had to plead sufficient facts on all of the ultimate elements of a disparate treatment claim to make his case plausible.").  To survive IBM's motion to dismiss, however, Nuñez must plausibly plead the ultimate elements of her Title VII claim. *See Chhim*, 836 F.3d at 370.  And since *McDonnell Douglas* will govern when a plaintiff relies on indirect evidence of discrimination, it can be helpful to reference that framework when the court is determining whether a plaintiff has plausibly alleged the ultimate elements of her claim.  *See Cicalese v. Univ. of Tex. Med. Branch*, 924 F.3d 762, 767 (5th Cir. 2019) (Title VII case) ("If a plaintiff's . . . claim depends on circumstantial evidence, he will 'ultimately have to show' that he can satisfy the *McDonnell Douglas* framework.  In such cases, we have said that it can be 'helpful to reference' that framework when the court is determining whether a plaintiff has plausibly alleged the ultimate elements of the . . . claim." (quoting *Chhim*, 836 F.3d at 470-71)).

employee's compensation or as to the "terms, conditions, or privileges of employment," like changing the employee's work schedule or denying weekends off. *Hamilton v. Dallas County*, 79 F.4th 494, 502-06 (5th Cir. 2023) (en banc); *see* 42 U.S.C. § 2000e-2(a)(1).

To plausibly plead a Title VII discrimination claim based on pay disparity, a plaintiff must allege sufficient facts for the court to draw the reasonable inference that she was paid less than similarly situated individuals outside the protected class. *See Lindsley v. TRT Holdings, Inc.*, 984 F.3d 460, 466-67 (5th Cir. 2021). Other individuals are considered "similarly situated" to the plaintiff if they perform "work requiring substantially the same responsibility," *id.* at 467 (quoting *Taylor v. United Parcel Serv., Inc.*, 554 F.3d 510, 522 (5th Cir. 2008)), or if they "share[] the same job or responsibilities, report[] to the same supervisor, [and] ha[ve] essentially comparable violation histories," *Hernandez v. Yellow Transp.*, 670 F.3d 644, 659 (5th Cir. 2012) (internal quotation marks and citation omitted).

2

Except for her pay-based claim, Nuñez has failed to plead a plausible Title VII claim for sex discrimination.

Nuñez, a female, is a member of a protected class. She alleges that, beginning in September 2020, there was a pay disparity between her and two male Vice Presidents who worked under her supervisor, David La Rose ("La Rose"), performing "the same task and similar tasks." 2d. Am. Compl. (ECF No. 30) at ¶¶ 12, 14, 33, 35, 37, 39. Although these allegations are only borderline adequate, the court holds that, taken as true, they are sufficient to enable the court to draw the reasonable inference that she was paid less than similarly

situated individuals outside the protected class. The pleading identifies the comparators as males who were working under the same supervisor as she and performing the same tasks and similar tasks.[6]

Except for her pay-based claim, Nuñez has failed to plead sufficient facts for the court to draw the reasonable inference that she was the victim of sex discrimination. She makes the same insufficient, conclusory allegations about her qualifications for her position as she did in her previous pleadings. *See Iqbal*, 556 U.S. at 678. Accordingly, the court grants IBM's motion as to Nuñez's Title VII sex discrimination claim except insofar as it is based on unequal pay.

3

The court reaches the same conclusion as to Nuñez's Title VII claim for race or color

---

[6]IBM asserts that any Title VII discrimination claim alleging pay disparity—whether based on sex, race, or color—is untimely. This is so, IBM maintains, because the court previously ruled that it would only consider discrete events that occurred after November 12, 2021 for purposes of Nuñez's suit. *See* D. Br. (ECF No. 33) at 14; *see also Nuñez I*, 2023 WL 5986463, at *3. IBM points to one place in Nuñez's second amended complaint where she alleges that, "[u]ntil September 2021, others similarly situated were treated more favorably through pay increases than Plaintiff," asserting that this statement means that any pay disparity was resolved by that time. 2d. Am. Compl. ¶ 44. The court disagrees.

In other places in the second amended complaint, Nuñez appears to allege that, even after a pay increase "in the year 2021 through 2022," Nuñez "continued to be paid less than her non-ethnic and male colleagues." *Id.* ¶¶ 12, 33, 37, 50, 64. At oral argument, Nuñez also asserted that, even after her pay increase "in the year 2022 through 2023," which was allegedly either a mere remedial measure to bring her pay somewhat more in line with that of her comparators or simply an adjustment for inflation, her compensation was still less than theirs. *Id.* Viewing all allegations in the light most favorable to Nuñez, the court declines to hold that Nuñez's Title VII discrimination claims alleging pay disparity—whether based on sex, race, or color—are untimely for alleging events that had been remedied by September 2021.

discrimination.

Nuñez pleads that she is "of Hispanic descent," which is an adequate allegation of her membership in a protected class. She also alleges that she was paid less than Michelle Stern, a Caucasian who preceded her as Vice President Global Managing Director of Arrow, even though the duties and obligations of the position remained the same once Nuñez took over. And, as discussed above, Nuñez alleges that, beginning in September 2020, there was a pay disparity between her and two Caucasian Vice Presidents who worked under the same supervisor as she (La Rose), performing "the same task and similar tasks." 2d. Am. Compl. (ECF No. 30) at ¶¶ 12, 33, 37, 50, 64.

Although, as with her sex-based pay clam, these allegations are only borderline adequate, the court holds that, taken as true, they are sufficient to enable the court to draw the reasonable inference that she was paid less than similarly situated individuals outside the protected class. The pleading identifies the comparators as Caucasians who were working under the same supervisor as she and performing the same tasks and similar tasks.

Otherwise, Nuñez still makes the same insufficient, conclusory allegations about her qualifications for that position as she did in her previous pleadings. Consequently, except for her pay-based claim, she has failed to plead sufficient facts to state a plausible claim for race or color discrimination under Title VII.

Accordingly, the court grants IBM's motion as to Nuñez's Title VII-based claim for race and color discrimination except insofar as it is based on unequal pay.

B

The court now turns to Nuñez's Title VII-based retaliation claim.

To plead a plausible Title VII retaliation claim, the plaintiff must allege sufficient facts for the court to draw the reasonable inference: "(1) that the plaintiff engaged in activity protected by Title VII; (2) that an adverse employment action occurred; and (3) that a causal link existed between the protected activity and the adverse action." *Banks v. E. Baton Rouge Par. Sch. Bd.*, 320 F.3d 570, 575 (5th Cir. 2003) (internal quotation marks omitted). "Protected activity is defined as opposition to any practice rendered unlawful by Title VII, including making a charge, testifying, assisting, or participating in any investigation, proceeding, or hearing under Title VII." *Green v. Adm'rs of Tulane Educ. Fund*, 284 F.3d 642, 657 (5th Cir. 2002).

Nuñez still does not clearly identify the protected activity in which she engaged. Although she apparently testified for IBM in the *Kingston v. IBM* retaliation lawsuit, it is not evident that her role in that lawsuit constituted opposition to employer practices made unlawful by Title VII. As the court noted in *Nuñez II*, in the *Kingston* lawsuit Nuñez testified *on behalf of IBM*—not on behalf of the individual opposing IBM's practices. Neither her second amended complaint nor the Ninth Circuit's opinion in *Kingston* would permit this court to draw the reasonable inference that she engaged in protected activity—that is, that she opposed IBM by giving testimony unfavorable to IBM or otherwise. The second amended complaint also hints that La Rose may have been angered by Nuñez's poor performance on the stand in the *Kingston* case, *see* 2d Am. Compl. ¶¶ 18, 71 (alleging that

when Nuñez told La Rose that her testimony had gone badly, "[h]e seemed irritated but remained composed"). But again, this allegation would not permit this court to draw the reasonable inference that La Rose's emotional response and subsequent hostile actions toward Nuñez—even if they were intended as retribution for Nuñez's failure to better defend IBM—constituted an adverse employment action *in response to Nuñez's engagement in protected activity*, as is required for a Title VII retaliation claim. At oral argument, Nuñez's counsel also appeared to assert that the fact that Nuñez was named in the EEOC Charge that triggered the *Kingston* case means that she engaged in protected activity. But there are no factual allegations in the second amended complaint to substantiate this assertion or to explain how simply being named in another individual's EEOC Charge constitutes opposition to IBM's practices. Furthermore, although in one place in the second amended complaint Nuñez asserts that "she was illegally investigated and her duties altered," 2d. Am. Compl. (ECF No. 30) at ¶ 67, the pleading contains no factual allegations that substantiate that assertion.

Even assuming that Nuñez's filing of an internal complaint with IBM Human Resources and the filing of her Charge with the EEOC constitute protected activity, Nuñez has failed to plausibly plead a causal link between that activity and any adverse employment action. Although the burden to plead causation at the *prima facie* stage is "minimal," *see Khanna v. Park Place Motorcars of Hous., Ltd.*, 2000 WL 1801850, at *4 (N.D. Tex. Dec. 6, 2000) (Fitzwater, J.), the second amended complaint still alleges no facts indicating that IBM took action against her *after* she filed these documents.

- 12 -

Furthermore, Nuñez's second amended complaint still fails to make clear whether her retaliation claim is based on protected conduct that has already occurred or on future protected conduct as a result of her bringing this lawsuit. Because retaliation is a claim that must be based on employer actions that have already occurred, she has no valid claim for anticipated adverse employment actions that IBM may take in the future.

Accordingly, the court holds that IBM is entitled to dismissal of Nuñez's Title VII-based retaliation claim.

## C

Nuñez has failed to plead a plausible Title VII claim for hostile work environment.

To plead a plausible a claim for hostile work environment based on harassment by a supervisor, Nuñez must sufficiently allege that (1) she belongs to a protected group; (2) she was subjected to unwelcome harassment; (3) the harassment complained of was based on her membership in that protected group; and (4) the harassment complained of affected a "term, condition or privilege of employment." *Watts v. Kroger Co.*, 170 F.3d 505, 509 (5th Cir. 1999) (on rehearing) (citing *Jones v. Flagship Int'l*, 793 F.2d 714, 719-20 (5th Cir. 1986)). Regarding the fourth element of the claim,

> [h]arassment affects a term, condition, or privilege of employment if it is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment. Workplace conduct is not measured in isolation. In order to deem a work environment sufficiently hostile, all of the circumstances must be taken into consideration. This includes the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it

> unreasonably interferes with an employee's work performance.
> To be actionable, the work environment must be both
> objectively and subjectively offensive, one that a reasonable
> person would find hostile or abusive, and one that the victim in
> fact did perceive to be so.

*Hernandez*, 670 F.3d at 651 (citations and internal quotation marks omitted).  The legal

standard for workplace harassment is "high," *Gowesky v. Singing River Hosp. Sys.*, 321 F.3d

503, 509 (5th Cir. 2003), and "merely offensive" conduct is not actionable, *Harris v. Forklift*

*Sys., Inc.*, 510 U.S. 17, 21 (1993).  "[T]he Supreme Court has warned that these high

standards are intentionally demanding to ensure that Title VII does not become a general

civility code, and when properly applied, they will filter out complaints attacking the

ordinary tribulations of the workplace, such as the sporadic use of abusive language."

*Howard v. United Parcel Serv., Inc.*, 447 Fed. Appx. 626, 632 (5th Cir. 2011) (per curiam)

(citations and internal quotation marks omitted) (quoting *Faragher v. City of Boca Raton*,

524 U.S. 775, 788 (1998)).

It appears that Nuñez is attempting to bring a hostile work environment claim based

on the conduct of her supervisor, La Rose, after she disclosed her pregnancy to him.  But the

second amended complaint does not plausibly allege facts as to all elements of this claim.

She asserts that La Rose "started to treat her differently even when he and key personnel

knew she was pregnant," 2d. Am. Compl. (ECF No. 30) at ¶ 76; that he "seemed irritated but

remained composed" when she informed him of the allegedly stressful cross-examination she

had endured in the *Kingston* case, *id.* ¶ 18; that his "screaming at her in regards to a program

launch" was "merely a pretext and he was upset because of the results of the lawsuit and her

- 14 -

pregnancy," and he "made clear of his concerns regarding her capability of launching the program before her taking maternity leave," *id.* ¶ 19; and that he "request[ed] her to work on maternity leave" by sending her several emails while she was on leave, *id.* ¶¶ 21-23. These allegations do not constitute harassment that is sufficiently severe or pervasive as to have affected a term, condition, or privilege of Nuñez's employment. They allege a handful of isolated incidents of unpleasant behavior and/or abusive language by La Rose that were subjectively offensive to Nuñez but were not clearly objectively physically threatening or humiliating and do not appear to have unreasonably interfered with Nuñez's work performance.

Because Nuñez's second amended complaint does not meet the "high" legal standard for workplace harassment, *Gowesky*, 321 F.3d at 509, the court holds that IBM is entitled to dismissal of her Title VII hostile work environment claim.

V

The court now considers Nuñez's ADEA-based claim for age discrimination.

A

Under the ADEA, it is unlawful for an employer to "fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). "To establish an ADEA claim, '[a] plaintiff must prove by a preponderance of the evidence (which may be direct or circumstantial), that age was the "but-for" cause of the challenged employer decision.'" *Moss v. BMC Software, Inc.,*

610 F.3d 917, 922 (quoting *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 177-78 (2009)).
Under *McDonnell Douglas* a plaintiff alleging only circumstantial evidence must establish
a *prima facie* case of age discrimination by showing that (1) she was within the protected
class (i.e., she was over 40 years old) at the time of the challenged action; (2) she was
qualified for the position; (3) the defendant discharged, refused to hire, or otherwise
discriminated against her; and (4) (i) she was replaced by someone outside the protected
class, (ii) she was replaced by someone younger, or (iii) the discharge, refusal to hire, or
other discrimination was otherwise because of her age. *Machinchick v. PB Power, Inc.*, 398
F.3d 345, 350 (5th Cir. 2005); *McCann v. Tex. City Refin., Inc.*, 984 F.2d 667, 672 (5th Cir.
1993).

B

Nuñez has not plausibly pleaded a *prima facie* case of age discrimination under the
ADEA.

Her second amended complaint alleges:

> (1) that she is over forty (40+) years of age and a member of a
> protected class; (2) that she was qualified for the positions she
> held; (3) that she was discharged from positions for which she
> was otherwise qualified to hold; and (4) that she was replaced by
> someone outside the protected class, replaced by someone
> younger, or otherwise discharged because of age.

2d. Am. Compl. (ECF No. 30) at ¶ 31. These are conclusory allegations that merely recite
the elements of the *prima facie* case and provide no facts specific to Nuñez. It is settled that
"a formulaic recitation of the elements of a cause of action will not do." *Iqbal*, 556 U.S. at

- 16 -

678 (quoting *Twombly*, 550 U.S. at 555).   Furthermore, the allegation that Nuñez was discharged on account of her age is at odds with her assertion elsewhere in her second amended complaint that indicate she is still employed by IBM.

Accordingly, the court dismisses Nuñez's ADEA claim for age discrimination.

VI

The court next addresses Nuñez's FMLA claims.   Nuñez again alleges that IBM violated her right to FMLA leave and also retaliated against her for protected conduct under the FMLA.

A

The FMLA entitles an employee to take up to twelve weeks of unpaid leave per year for, *inter alia*, "the care of a newborn son or daughter" or "the employee's own serious health condition when the condition interferes with the employee's ability to perform at work." *Coleman v. Ct. App. of Md.*, 566 U.S. 30, 34 (2012) (citing 29 U.S.C. § 2612(a)(1)).   The FMLA also entitles an employee returning from leave "to be restored by the employer to the position of employment held by the employee when the leave was commenced[] or . . . to be restored to an equivalent position." *Baumeister v. AIG Glob. Inv. Corp.*, 420 Fed. Appx. 351, 354 (5th Cir. 2011) (citing 29 U.S.C. § 2614).

It is unlawful for an employer to "interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided" by the FMLA.   29 U.S.C. § 2615(a)(1).   Such illegal actions include refusing to authorize FMLA leave, discouraging an employee from using leave, and changing an employee's essential job functions to preclude taking leave.

- 17 -

29 C.F.R. § 825.220(b) (2023).  To establish an FMLA interference claim, a plaintiff must show that: (1) she was an eligible employee; (2) her employer was subject to FMLA requirements; (3) she was entitled to leave; (4) she gave proper notice of her intention to take FMLA leave; and (5) her employer denied her the FMLA benefits to which she was entitled. *Byrd v. Clay County*, 2022 WL 3154816, at *3 (N.D. Tex. July 12, 2022) (O'Connor, J.) (citing *Caldwell v. KHOU-TV*, 850 F.3d 237, 245 (5th Cir. 2017)), *aff'd*, 2023 WL 3122462 (5th Cir. Apr. 27, 2023).

The FMLA also prohibits retaliation, making it "unlawful for any employer to discharge or in any other manner discriminate against any individual" for filing charges under the FMLA or testifying in an FMLA proceeding.  29 U.S.C. § 2615.  To establish a valid retaliation claim, a plaintiff must show that: (1) she engaged in a protected activity; (2) she suffered an adverse employment action; and (3) there is a causal link between the protected activity and the adverse employment action.  *Ion v. Chevron USA, Inc.*, 731 F.3d 379, 390 (5th Cir. 2013); *Richardson v. Monitronics Int'l, Inc.*, 434 F.3d 327, 332 (5th Cir. 2005).

B

Nuñez again alleges that IBM interfered with her exercise of FMLA rights by "hinder[ing] an eligible employee from using FMLA by discouraging them from requesting leave, changing their hours, harassing plaintiff while on FMLA." 2d. Am. Compl. (ECF No. 30) at ¶ 90.  She also again asserts that IBM "willfully attempted, by and through Mr. La Rose, to interfere with [her] FMLA leave by contacting her and having multiple meetings

- 18 -

requesting her input and participation." *Id.* ¶ 95.  In particular, Nuñez alleges that, when La Rose sent her a calendar invitation while she was on leave inviting her to meet with someone about a possible promotion, she "immediately was dissuaded from taking any further maternity leave even though she had the ability to request further leave under the FMLA," because it was "clear to [her], that Mr. La Rose was upset that she was still on maternity leave when she had wanted to take more." *Id.* ¶ 23.

Nuñez's first allegation does little more than recite the legal standard and is, at least in part, at odds with specific facts she alleges elsewhere.  And her additional allegations do not satisfy all of the elements of the FMLA interference claim.  Although she alleges that La Rose denied her FMLA benefits by discouraging her from taking additional weeks of FMLA leave to which she was entitled, she does not plead that she gave IBM notice that she intended to take that additional leave.

Nuñez also appears to allege FMLA-based retaliation, although the second amended complaint has removed some language that the first amended complaint included as to this claim.  But her allegations are still a threadbare recital of the legal standard.  The second amended complaint does not plead sufficient facts for the court to draw the reasonable inference that Nuñez filed charges under the FMLA or testified in an FMLA proceeding and suffered an adverse employment action as a consequence.

The court therefore dismisses Nuñez's FMLA-based claims.

\*   \*   \*

For the reasons explained, the court grants IBM's motion as to all claims except

Nuñez's Title VII-based unequal pay claims.

**SO ORDERED**.

April 5, 2024.

_____

SIDNEY A. FITZWATER
SENIOR JUDGE